UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

MARIA A. APONTE, *as Administrator of
the Estate of*

OSVALDO APONTE, *Deceased*.

**MEMORANDUM AND ORDER**

     *Plaintiff*,    22-cv-0018 (KAM)(SIL)

 -against-


OUR LADY OF CONSOLATION NURSING AND
REHABILITATIVE CARE CENTER, OUR LADY OF
CONSOLATION GERIATRIC CARE CENTER, and
CATHOLIC HEALTH SYSTEM OF LONG ISLAND,
INC.,

     *Defendants*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    Maria A. Aponte, individually, and as Administrator of

the Estate of Osvaldo Aponte ("Plaintiff") commenced this action

against Our Lady of Consolation Geriatric Care Center d/b/a Our

Lady of Consolation Nursing & Rehabilitation, Our Lady of

Consolation Nursing and Rehabilitative Care Center, and Catholic

Health System of Long Island ("Defendants"), domestic

corporations that operate a nursing home in Suffolk County, New

York.  Plaintiff alleged negligence, gross negligence, wrongful

death, and violations of New York Public Health Law.  Defendants

then removed the action to federal court.  Plaintiff now moves

to remand the action to state court for lack of subject matter jurisdiction.  Plaintiff's motion is **GRANTED**, because this Court lacks subject matter jurisdiction over this action.

**Background**

**I.   Background**

Between August 7, 2019, and April 11, 2020, Osvaldo Aponte was a resident of Defendants' nursing home facility in West Islip, New York.  (ECF No. 1 Ex. A, Summons and Complaint ("Compl.") at 7.)  On April 4, 2020, Mr. Aponte developed a fever, chills, and a cough.  (ECF No. 11-4, Medical Records ("Med. Rec.") at 9.)  Observing these symptoms, Mr. Aponte's attending physician ordered a COVID-19 test, for masks to be administered to Mr. Aponte and his roommate, and for Mr. Aponte to be placed on droplet precautions.  (*Id.* at 7-9.) After testing positive for COVID-19, Mr. Aponte's symptoms worsened, and he developed respiratory distress and hypoxia.  (*Id.* at 2-4.; Compl. at 10.)  Mr. Aponte died on April 11, 2020.  (*Med. Rec.* at 2.)

On December 7, 2021, Plaintiff Maria A. Aponte, as administrator of the estate of Mr. Aponte, filed a complaint against Defendants in the Supreme Court of the State of New York, Nassau County.  (*See* Compl.)  Plaintiff claimed that "as a direct and foreseeable consequence" of Defendants' "longstanding history of failing to provide proper infection prevention and

2

control procedures . . . take steps to prepare to prevent the spread of future infections," Mr. Aponte unnecessarily died. (*Id.* at 7–8.)  Plaintiff alleged that the Defendants' nursing home was issued 31 citations for violations of the New York Public Health Code between 2016 and 2020.  (*Id.* at 5.) Moreover, the New York State Department of Health cited the nursing home in 2019 for violating federal regulations and its own policies regarding contact isolation precautions and infection control.  (*Id.* at 5.)  Plaintiff alleged that "despite being armed with knowledge of prior public health infection events," Defendants failed to institute adequate precautions in response to the COVID-19 pandemic, including securing sufficient personal protective equipment (PPE), contacting and advising patients' families about the facility's COVID-19 response, and safeguarding residents against the virus's spread. (*Id.* at 5–7.) Plaintiff asserted one statutory claim for violation of New York Public Health Law § 2801-D and 2803-C and state common-law claims for negligence, gross negligence, and wrongful death. (I*d.* at 8-17.)

Defendants timely removed the case to this Court on January 3, 2022.  (*See* ECF. No. 1, Notice of Removal ("Notice").)  Defendants claim there are multiple grounds for this Court to exercise subject matter jurisdiction over the action: (1) the Complaint arises under federal law pursuant to

28 U.S.C. §§ 1331, 1367, 1441(a), 1442(a)(1), 1446, and the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d, 247d-6e (2020), and related federal regulations, thereby completely pre-empting Plaintiff's claims; (2) the Court has jurisdiction under the *Grable* doctrine, *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005), because "there are substantial federal legal and policy . . . interests within the meaning of [the *Grable* doctrine] in having a unified, whole-of-nation response to the COVID-19 pandemic . . . [and] in having a uniform interpretation of the PREP Act"; and (3) the Court has jurisdiction under the federal officer removal statute pursuant to 28 U.S.C. § 1442(a)(1), because Defendants "[were] a critical private resource enlisted to help carry out the federal effort to treat and prevent the spread of COVID-19." (ECF No. 11, Memorandum of Law in Opposition to Plaintiff's Motion to Remand ("Opp. Mot.") at 10, 27, 28-32.)

Pending before the Court is Plaintiff's motion to remand this action to state court. (ECF No. 9, Motion to Remand ("Mot.")) Plaintiff argues that remand is warranted because the Complaint alleges only state law tort claims, the parties are not diverse, and the action is not removable on any of the bases proffered by Defendants. Defendants oppose this motion. (*See* ECF No. 11, Opp. Mot.)

## II.   PREP Act

Relevant to Defendants' argument, the PREP Act generally provides, in part, that:

> a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the Secretary of Health and Human Services] has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)(1).  In March 2020, the Secretary of Health and Human Services (the "Secretary") issued a declaration under the PREP Act to provide immunity from liability for activities related to medical countermeasures against COVID-19 (the "Declaration").  85 Fed. Reg. 15,198 (Mar. 17, 2020).  The Declaration was most recently amended on January 7, 2022.  *Tenth Amended Declaration*, 87 Fed. Reg. 982 (Jan. 7, 2022).

A "covered countermeasure" under the PREP Act is defined as "a qualified pandemic or epidemic product"; "a security countermeasure"; a "drug . . . , biological product . . . , or device . . . that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act ['FDCA']"; or "a respiratory protective device that is approved by the National Institute for Occupational Safety and Health ['NIOSH'], ... and that the Secretary determines to be a priority for use during a public

5

health emergency declared under section 247d of this title." 42
U.S.C. § 247d-6d(i)(1).

"[A]dministration" of covered countermeasures "means
physical provision of the countermeasures to recipients, or
activities and decisions directly relating to public and private
delivery, distribution and dispensing of the countermeasures to
recipients, management and operation of countermeasure programs,
or management and operation of locations for purpose of
distributing and dispensing countermeasures." Declaration, 85
Fed. Reg. at 15,202. The Declaration further specifies, "it is
the Secretary's interpretation that, when a Declaration is in
effect, the Act precludes, for example, liability claims
alleging negligence by a manufacturer in creating a vaccine, or
negligence by a health care provider in prescribing the wrong
dose, absent willful misconduct." *Id.*

In December 2020, the Secretary amended the
Declaration "to make explicit that there can be situations where
not administering a covered countermeasure to a particular
individual can fall within the PREP Act" and the liability
protections it affords. Fourth Amended Declaration, 85 Fed.
Reg. at 79,194. Accordingly, "[w]here there are limited Covered
Countermeasures, not administering a Covered Countermeasure to
one individual in order to administer it to another individual
can constitute 'relating to . . . the administration to . . . an

6

individual' under [the PREP Act]."  *Id.* at 79,197.  In other
words, "[p]rioritization or purposeful allocation of a Covered
Countermeasure, particularly if done in accordance with a public
health authority's directive, can fall within the PREP Act" and
its liability protections.  *Id.*  The Fourth Amended Declaration
specifically contemplates a situation where there is a limited
number of COVID-19 vaccines and a covered person under the Act
chooses not to administer vaccines to those in less vulnerable
populations so that those in more vulnerable populations may be
vaccinated.  *See id.*

          A "covered person" under the Act includes
manufacturers, distributors, program planners, and qualified
persons who prescribed, administered, or dispensed such
countermeasures.  42 U.S.C. § 247d-6d(i)(2).  In turn, a
"qualified person" includes any licensed health professional or
other person authorized to prescribe, administer, or dispense
covered countermeasures, including hospitals, nursing homes and
other entities.  *Id.* § 247d-6d(i)(8).  A "program planner"
includes "persons" who supervise or administer a program with
respect to the administration, provision, or use of a covered
countermeasure, or who "provides a facility to administer or use
a covered countermeasure in accordance with a declaration [from
the Secretary]."  *Id.* § 247d-6d(i)(6).  Neither the text of the
PREP Act nor the Secretary's Declaration expressly includes

nursing homes within the definition of "covered person." The
Fourth Amended Declaration, however, makes clear that the PREP
Act "must be construed in accordance with the Advisory Opinions
of the Office of the General Counsel [of the U.S. Department of
Health and Human Services ("HHS")] (Advisory Opinions)," and the
Declaration expressly incorporates such Advisory Opinions.
*Fourth Amended Declaration*, 85 Fed. Reg. at 79,194–95.

When the PREP Act applies, it provides broad immunity
"from suit and liability under Federal and State law," 42 U.S.C.
§ 247d-6d(a)(1), and the remedy available to an injured
plaintiff is an administrative "Covered Countermeasure Process
Fund" ("Process Fund"), administered by the Secretary, that
provides "timely, uniform, and adequate compensation to eligible
individuals for covered injuries directly caused by the
administration or use of a covered countermeasure," *see id*. §§
247d-6e(a), 247d-6e(b)(1). "No court of the United States, or
of any State, shall have subject matter jurisdiction to review,
whether by mandamus or otherwise, any action by the [HHS]
Secretary" in administering the Process Fund, *id*. § 247d-
6e(b)(5)(C), and compensation through the Process Fund "shall be
exclusive of any other civil action or proceeding for any claim
or suit this section encompasses," *id*. § 247d-6e(d)(4). The
only exception is if there is "death or serious physical injury
proximately caused by willful misconduct," *id*. § 247d-6d(d)(1),

in which case an action may "be filed and maintained only in the United States District Court for the District of Columbia," *id.* § 247d-6d(e)(1).  There is an administrative exhaustion requirement before a plaintiff may bring a suit for injury proximately caused by willful misconduct, *id.* § 247d-6e(d)(1), and a plaintiff may instead elect to accept compensation from the Process Fund, if the Secretary determines that the plaintiff qualifies, *id.* § 247d-6e(d)(5).

The PREP Act also includes a provision expressly preempting state laws that conflict with the terms of the statute:

> During the effective period of a declaration [by the Secretary], or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>
> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>
> (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure

> under this section or any other provision
> of this chapter, or under the [FDCA].

*Id.* § 247d-6d(b)(8).

In sum, the PREP Act—with one limited exception for "willful misconduct"—provides covered persons with immunity from suit for all claims of loss caused by, arising out of, relating to, or resulting from the administration to or use by an individual of covered countermeasures, which include certain drugs, biological products, and devices. *Id.* Covered persons broadly include individuals as well as private and public entities, and the administration of a covered countermeasure can include "purposeful allocation" of the countermeasure, including decisions not to provide a countermeasure to an individual. *Id.* The PREP Act expressly preempts conflicting state laws and, in the view of the Secretary, implicates "substantial" federal legal and policy interests. *Id.*

### Standard of Review

To adjudicate whether an action was properly removed from state court, a federal district court must have original jurisdiction pursuant to either 28 U.S.C. §§ 1331 or 1332[1]. *See* 28 U.S.C. § 1441. Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

---

[1] Defendants do not rely on § 1332 (diversity jurisdiction) as a basis for removal.

States."   28 U.S.C. § 1331.   "It is long settled law that a
cause of action arises under federal law only when the
plaintiff's well-pleaded complaint raises issues of federal
law."   *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987).

        Following the removal of an action to federal court,
"[i]f at any time before final judgment it appears that the
district court lacks subject matter jurisdiction, the case shall
be remanded."   28 U.S.C. § 1447(c).   Defendants bear the burden
of demonstrating that federal subject matter jurisdiction
exists.   *See, e.g.*, *Wilds v. United Parcel Serv., Inc.*, 262 F.
Supp. 2d 163, 171 (S.D.N.Y.2003) (citing, inter alia, *United
Food & Comm. Workers Union, Local 919, AFL–CIO v. CenterMark
Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994))
("On a motion to remand, the party seeking to sustain the
removal, not the party seeking remand, bears the burden of
demonstrating that removal was proper." (quotation omitted)).
"Unless that burden is met, the case must be remanded back to
state court.   At [the motion to remand] stage . . . , the party
seeking remand is presumed to be entitled to it unless the
removing party can demonstrate otherwise."   *Id.* (quoting
*Bellido-Sullivan v. Am. Int'l Grp., Inc.*, 123 F. Supp. 2d 161,
163 (S.D.N.Y. 2000)).   Therefore, in the context of a motion to
remand, "federal courts construe the removal statute narrowly,
resolving any doubts against removability."   *Sherman v. A.J.*

*Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 325 (S.D.N.Y. 2007) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

## Discussion

Defendants have not carried their burden of demonstrating that removal was proper and, therefore, remand by this Court is required.  "This Court is not the first to consider whether a federal court has jurisdiction to hear claims against a health care facility arising from a patient's COVID-19-related death or illness." *Ranieri v. Providence Rest, Inc.*, No. 22-CV-1030 (NRB), 2022 WL 2819411, at *1 (S.D.N.Y. 2022) (collecting cases); *Rivera v. Eastchester Rehab. & Health Care LLC*, No. 22-CV-02019 (CM), 2022 WL 2222979, at *2 (S.D.N.Y. June 21, 2022) (collecting cases).

The overwhelming consensus among district courts that have considered the issues presented by the instant motion to remand is that removal is improper and remand of the case back to state court is required.[2]  Every Circuit Court that has considered these issues has concurred.  *See Maglioli v. All. HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679 (9th Cir. 2022); *Mitchell v.*

---

[2] A recent estimate indicates that more than 80 federal actions nationally, that presented the same issues, had been removed, and were remanded.  *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1212 (7th Cir. 2022).

*Advanced HCS, L.L.C.,* 28 F.4th 580 (5th Cir. 2022); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210 (7th Cir. 2022).

This Court finds no reason to deviate from the established authority and respectfully rejects Defendants' arguments that there is federal jurisdiction in this case under the preemptive force of the PREP Act, the *Grable* doctrine, or the federal officer removal statute.

## I.   Removal Under 28 U.S.C. § 1441(a) Was Improper

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant."  In other words, a claim may only be removed to federal court if it could have been filed in federal court originally.  *See Fax Telecomms. Inc. v. AT&T*, 138 F.3d 479, 486 (2d Cir. 1998).  Where, as here, there is no diversity of citizenship, the Court must have federal question jurisdiction for removal to be proper.  *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

"The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule." *Id*.  Pursuant to this rule, "federal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law, and only when plaintiff's well-pleaded complaint

raises issues of federal law." *Id.* (citations omitted).  Thus,

the plaintiff—as the "master of the complaint"—can "avoid

federal jurisdiction by pleading only state claims even where a

federal claim is also available." *Id.* (citing *Caterpillar*, 482

U.S. at 392).

Notably, a defendant cannot "evade [the well-pleaded

complaint] rule by raising a federal question in its responsive

pleadings and then attempting to remove on that basis." *Calabro

v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir.

2011) (per curiam) (citing *Holmes Grp., Inc. v. Vornado Air

Circulation Sys., Inc.*, 535 U.S. 826, 831-32 (2002)).  It is

therefore not enough that a defendant asserts as grounds for

removal a federal (1) defense, *Caterpillar*, 482 U.S. at 393; *New

York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir.

2012) ("It is not enough that the complaint anticipates a

potential federal defense."); (2) counterclaim, *Vaden v.

Discovery Bank*, 556 U.S. 49, 60 (2009) ("Nor can federal

jurisdiction rest upon an actual or anticipated counterclaim.");

*Sovereign Bank, N.A. v. Lee*, 968 F. Supp. 2d 515, 518 (E.D.N.Y.

2013); or (3) third-party claim, *see, e.g.*, *Calabro*, 650 F.3d at

166 (holding that a defendant was "objectively unreasonable" in

arguing for removal based on federal claims in its third-party

complaint); *Certain Underwriters at Lloyd's London v. Art

Crating, Inc.*, No. 12-CV-5078(NGG)(VMS), 2014 WL 123488, at *8

(E.D.N.Y. 2014) ("[T]hird-party pleadings do not provide a basis for removal of the initial action in almost all cases.").

Defendants assert that federal question jurisdiction exists in this case under 28 U.S.C. § 1331, which grants district courts original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." (*See* ECF No. 1, Notice at 3.) Plaintiff's Complaint, however, pleads no federal claim on its face, instead alleging "garden-variety state law claims" of common-law negligence, gross negligence, wrongful death, and violations of New York Public Health Law. (*See* ECF No. 1 Ex. A, Compl. at 8–17.); *see also Rivera v. Eastchester Rehab. & Health Care LLC*, No. 22-CV-02019 (CM), 2022 WL 2222979, at *2 (S.D.N.Y. June 21, 2022) (granting the plaintiff's motion to remand where plaintiff alleged common-law negligence, gross negligence, wrongful death, and violations of the New York Public Health law, among other claims). "Even if some of these claims implicate or are preempted by federal law by way of an affirmative defense, such defenses do not appear on the face of the well-pleaded complaint, and accordingly do not authorize removal to federal court." *Dupervil v. All. Health Operations, LCC*, 516 F. Supp. 3d 238, 249 (E.D.N.Y. 2021); *see Metro. Life,* 481 U.S. 63; *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983); *Gully v. First Nat'l Bank*, 299 U.S. 109,

116 (1936); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) ("Generally, a complaint that pleads only state law causes of action may not be removed to federal court even where Congress has chosen to regulate the entire field of law in the area in question.").

There are, however, exceptions to the well-pleaded complaint rule. For one, a state law claim may be completely preempted by federal law in a particular area such that the claim "is really one of federal law". *Franchise Tax Bd.*, 463 U.S. at 13 (quotation omitted). For another, under the *Grable* doctrine, a well-pleaded state-law claim may still involve "some substantial, disputed question of federal law [as] a necessary element," as Defendants allege here. *Id.* The Court addresses each of these exceptions in turn.

A. **The PREP Act Does Not Establish Complete Preemption**

Defendants argue that the PREP Act affords the Court subject matter jurisdiction over this action pursuant to the complete preemption doctrine. (ECF No. 11, Opp. Mot. at 11.) Complete preemption "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life*, 481 U.S. at 65. Where "a federal statute 'wholly displaces the state-law cause of action,' such that the claim, 'even if pleaded in terms of state law, is in reality based on federal law,'" complete

16

preemption applies, and a defendant may properly remove the state-law claim. *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004)).

The complete preemption doctrine only applies where the federal statute exhibits "extraordinary" preemptive force. *Metro. Life*, 481 U.S. at 65.  The Supreme Court has identified just three statutes that meet this high standard: § 301 of the Labor-Management Relations Act ("LMRA"), § 502(a) of the Employee Retirement Income Security Act ("ERISA"), and §§ 85 and 86 of the National Bank Act.  *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005); *see Whitehurst v. 1199SEIU United Healthcare Workers East*, 928 F.3d 201, 206 (2d Cir. 2019).  "[T]o determine whether a federal statute completely preempts a state-law claim within its ambit, [the court] must ask whether the federal statute provides the exclusive cause of action for the asserted state-law claim," and if so, the claim is removable under 28 U.S.C. § 1441.  *Sullivan*, 424 F.3d at 275-76 (internal quotations omitted).  "Put another way, '[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.'"  *Id.* (quoting *Caterpillar*, 482 U.S. at 392; *see Franchise Tax Bd.*, 463 U.S. at 13 (holding that if plaintiff's

causes of action filed in state court "come within the original jurisdiction of the federal courts, removal was proper").

Here, the PREP Act does not provide an exclusive cause of action for the claims within its scope.  Whether the PREP Act is a complete preemption statute has been thoroughly analyzed by a court in this District in *Dupervil v. Alliance Health Operations*, LLC, 516 F. Supp. 3d 238 (E.D.N.Y. 2021).  In *Dupervil*, the plaintiff brought state law claims of negligence, gross negligence, wrongful death, and medical malpractice in New York State Supreme Court related to the death of a COVID-19 patient that occurred while under the care of the nursing home defendants.  *Id*. at 242.  There, as here, the defendants removed the action to federal court arguing that the court had subject matter jurisdiction because, *inter alia*, the PREP Act completely preempted plaintiff's claims.  *Id*.  The Honorable Pamela K. Chen remanded the case back to state court, finding that the PREP Act is not a complete preemption statute because it "does not provide the exclusive cause of action for claims that fall within its scope."  *Id*. at 249-50.

That the PREP Act does not exhibit the "extraordinary" preemptive force required for complete preemption has been decided by several district courts throughout the Second Circuit.  *See Escobar v. Mercy Med. Ctr.*, No. 21CV02101JMAARL, 2022 WL 669366, at *2 (E.D.N.Y. Mar. 7, 2022); *Rivera-Zayas v.*

*Our Lady of Consolation*, 2021 WL 3549878, at *2 (E.D.N.Y. 2021); *Leroy v. Hume*, No. 20-CV-5323, 2021 WL 3560876, at *6 (E.D.N.Y. 2021); *G*arcia v. N.Y.C. Health & Hosps. Corp.*, No. 20-CV-9970, 2021 WL 1317178, at *1 (S.D.N.Y. Apr. 8, 2021); *Shapnik v. Hebrew Home for Aged at Riverdale*, No. 20-CV-6774, 2021 WL 1614818 (S.D.N.Y. Apr. 26, 2021); *see also Saldana v. Glenhaven Healthcare LLC*, No. 20-56194, 2022 WL 518989, at *5 (9th Cir. Feb. 22, 2022); *Mitchell v. Advanced HCS, LLC*, 28 F.4th 580, 588 (5th Cir. 2022); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1214 (7th Cir. 2022).

Following the analysis previously presented in *Dupervil*, courts in this District noted that the Act is, "at its core, an immunity statute; it does not create rights, duties, or obligations." 516 F. Supp. 3d 251 (E.D.N.Y. 2021). Except for the narrow exception around "willful misconduct" claims, the PREP Act does not allow claims within its scope to be brought in state or federal court and, instead, confers the Secretary of Health and Human Services agency with the "sole authority" to adjudicate claims involving the PREP Act. *Id*.

Similarly, in the controlling Second Circuit case *Sullivan*, the relevant statute (the Railway Labor Act or "RLA") gave primary jurisdiction over relevant claims to a "board of adjustment" established under the RLA, rather than the federal courts. 424 F.3d at 270, 276; *Dupervil*, 516 F. Supp. 3d at 250-

51.  The Second Circuit concluded that it was "clear that the
RLA does not completely preempt state-law claims that come
within its scope," because state-law claims under the RLA could
not have been filed in the first instance in federal court.
Accordingly, this Court finds that Defendants have not presented
any compelling legal reasons to stray from the overwhelming
consensus that the PREP Act is not a complete preemption statute
and Plaintiff's state-law claims are not preempted within the
statute's scope.

### B.   None of Plaintiff's Claims Necessarily Raise A Substantial, Disputed Federal Question Under The *Grable* Doctrine

In addition to its complete preemption argument,
Defendants also assert that there is federal question
jurisdiction over this matter pursuant to the *Grable* doctrine.
(ECF No. 11, Opp. Mot. at 27.)  The *Grable* doctrine functions as
a limited exception to the well-pleaded complaint rule, and
provides that "in certain cases[,] federal-question jurisdiction
will lie over state-law claims that implicate significant
federal issues." *Grable*, 545 U.S. at 312 (citation omitted).
Application of the *Grable* doctrine requires four elements: the
federal issue must be (1) "necessarily raised, (2) actually
disputed, (3) substantial, and (4) capable of resolution in
federal court without disrupting the federal-state balance
approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013)

(internal quotation marks and citations omitted); *accord New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016).  All four requirements must be fulfilled for the *Grable* doctrine to apply.  *See Gunn*, 568 U.S. at 258; *Jacobson*, 824 F.3d at 315.

Here, Plaintiff raises the claims of negligence, gross negligence, wrongful death, and violations of New York Public Health Law.  (ECF No. 1 Ex. A, Compl. at 8–17); *See Dupervil* at 258.  Here, because "none of Plaintiff's various claims . . . are affirmatively premised on the PREP Act, nor is the PREP Act an essential element of any of Plaintiff's claims," the first of the four requirements is clearly not fulfilled.  *Dupervil* at 258.  Defendants argue that a disputed federal question is necessarily raised, because resolution of the litigation requires a determination of the extent to which it is immune "from suit and liability under federal and state law with respect to claims relating to 'the administration' of a 'covered countermeasure.'" (Opp. Mot. At 27–28.)  Defendants further contend that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of [*Grable*] in having a unified, whole-of-nation response to the COVID-19 pandemic . . .[and] in having a uniform interpretation of the PREP Act." (*Id.* at 28.)

Defendants' invocation of *Grable* is unconvincing given the marked differences between the issue in *Grable* and the Plaintiff's claims in this case, which "could not be more different." *Shapnik*, 535 F. Supp. 3d at 320.  In *Grable*, the Internal Revenue Service had seized real property without giving notice pursuant to 26 U.S.C. § 6335, implicating the Internal Revenue Code as central to the plaintiff's claims for losses. 545 U.S. at 308.  Here, the "PREP Act is raised only as an immunity defense, and 'the immunity question is not an element of [p]laintiffs' state-law causes of action.'"  *Leroy*, 554 F. Supp. 3d at 481 (quoting *Shapnik*, 535 F. Supp. 3d at 320); *see also Dupervil*, 516 F. Supp. 3d at 257–59.

Defendants argue that the PREP Act is integral to this action because it provides federal defenses: immunity, preemption, and failure to exhaust federal administrative remedies under the PREP Act.  (ECF No. 11, Opp. Mot. at 16, 27–28.)  But it is well-established that "a case may not be removed to federal court on the basis of a federal defense." *Caterpillar*, 482 U.S. at 393.  The PREP Act, a statute affording immunity, is not an essential element of any of Plaintiff's state-law causes of action.  The existence of immunity is ordinarily a defense that can be raised or waived by a defendant.  *See, e.g., Donohue v. Cuomo*, 980 F.3d 53, 77 (2d Cir. 2020) ("The Eleventh Amendment 'does not automatically

destroy original jurisdiction,' but rather 'grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense' and a court need not 'raise the defect on its own.'") (*quoting Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998)); *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016).   Plaintiff need not prove that Defendants are not immune in order to prevail and, therefore, this Court must remand where the "face of [the] well pleaded complaint" alleges "only state tort and contract claims" and does not "necessarily [or at all] depend on a disputed and substantial issue of federal law.*"  Glatzer v. Bear Stearns & Co.*, 201 F. App'x 98, 99 (2d Cir. 2006).

This Court, therefore, adopts the analysis of other well-reasoned opinions from this Circuit, which conclude that *Grable* "does not support federal question and removal jurisdiction in this case." *Shapnik*, 535 F. Supp. 3d at 319–20; *see also Leroy*, 554 F. Supp. 3d at 481; *Dupervil*, 516 F. Supp. 3d at 257–59; *Ranieri*, 2022 WL 2819411, at *1; *Rivera*, 2022 WL 2222979, at *3; *Escobar*, 2022 WL 669366, at *2; *Feliciano v. Wayne Ctr. for Nursing & Rehab. LLC*, No. 22 CIV. 5626 (AT), 2022 WL 16636607, at *2 (S.D.N.Y. Nov. 2, 2022).

## II.  Removal Under 28 U.S.C. § 1442(a)(1) Was Improper Because Defendants Are Not Federal Officers

Defendants also argue that the case is removable under 28 U.S.C. § 1442(a)(1), "federal officer jurisdiction."  (*See* ECF No. 11, Opp. Mot. at 29-32.)  Under this statute, a case may be removed if it is against (1) the United States; (2) any agency of the United States; or (3) "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).

Here, Defendants rely on the third prong, asserting the federal government's various Declarations and Advisory Opinions rendered Defendants "a critical private resource enlisted to do a job the federal government had to do itself but could not." (ECF No. 11, Opp. Mot. at 30.)  Defendants contend that they were "acting under" under color of the federal government and HHS "to combat the pandemic with a herculean 'whole-of-nation response to the COVID-19 pandemic among federal, state, local and private-sector entities.'"  (*Id.*)

Under the third "officer" prong of 28 U.S.C. § 1442(a)(1), removal is proper if a defendant (1) is a "person[] within the meaning of the statute who acted under a federal officer"; (2) "performed the actions for which [it is] being sued under color of federal office"; and (3) "raise[s] a

colorable federal defense." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (internal citations, quotations, and alterations omitted).

A "person" within the meaning of the statute "includes corporate persons," but the Supreme Court has made clear that, for a private person to be considered "acting under" a federal officer, his or her actions "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007) (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)). "Merely complying with federal directives and regulations does not fall within the scope of Section 1442(a)(1), even if the actor is a highly regulated private entity." *Id.* at 153; *see also Veneruso v. Mt. Vernon Neighborhood Health Ctr.*, 586 App'x. 604, 607-08 (2d Cir. 2014). Defendants claim that because the federal government had a "close, directed relationship with healthcare facilities like [Defendants' nursing home] for its 'whole-of-nation' response," Defendants were acting under a federal officer. (ECF No. 11, Opp. Mot. at 35.)  Defendants' relationship to the federal government's COVID-19 response is not more close or direct than the other nursing homes that were "vital" to combatting the COVID-19 pandemic but were similarly found not to be "federal

officers". *See Rivera*, 2022 WL 2222979, at *3; *Dupervil*, 516 F. Supp. 3d at 260-61; *Leroy*, 554 F. Supp. 3d at 481-82.

Accordingly, the Court finds that Defendants are not persons "acting under" a federal agency as a federal officer and do not otherwise qualify for federal-officer removal.  Removal under 28 U.S.C. § 1442(a)(1) was therefore improper.

### Conclusion

Defendants have failed to establish that the Court has subject matter jurisdiction over the action and that removal was proper.  As such, the Court **GRANTS** Plaintiff's motion to remand. The Clerk of Court is respectfully directed to remand this case to the Supreme Court of the State of New York, Nassau County and terminate this case.


**SO ORDERED.**

DATED:      December 22, 2022
            Brooklyn, New York

                              _____/s/_____
                              **HON. KIYO A. MATSUMOTO**
                              United States District Judge